**Joel GOLDMAN, Plaintiff,**

v.

**HEALTHCARE MANAGEMENT SYSTEMS, INC. and Thomas E. Givens, Defendants.**

No. 1:05–cv–035.

United States District Court, W.D. Michigan, Southern Division.

June 20, 2008.

Bradley L. Smith, Bonnie R. Shaw, James Kenneth Cleland, Brinks Hofer Gilson & Lione, Ann Arbor, MI, for Plaintiff.

Keith C. Dennen, Bone McAllester Norton PLLC, Nashville, TN, Richard A. Kay, Adam John Brody, Jon M. Bylsma, Varnum Riddering Schmidt & Howlett LLP, Grand Rapids, MI, for Defendants.

*OPINION AND ORDER DENYING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CHALLENGING THE COPYRIGHTABILITY OF MEDICAL RECORDS COMPUTER PROGRAM*

*OPINION AND ORDER GRANTING PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EVIDENCE CONCERNING APPORTIONMENT OF LIABILITY OR DAMAGES BASED ON FREQUENCY OF COPYRIGHT NOTICE*

PAUL L. MALONEY, District Judge.

Before this Court is, *inter alia,* two motions in limine filed by Plaintiff Goldman. Plaintiff filed a motion (Dkt. No. 156) in limine to exclude evidence challenging the copyrightability of medical records computer program. Defendants filed a response (Dkt. No. 196). Plaintiff also filed a motion (Dkt. No. 185) in limine to ex-

clude evidence concerning apportionment of liability or damages based on frequency of copyright notice. Defendants filed a response (Dkt. No. 211).

## I. BACKGROUND

Plaintiff, a computer programmer, created a medical records system, an integrated package of computer programs, in the late 1970s. Plaintiff provided Defendant Givens with a copy of his software in 1983. In 1994, Defendant HMS registered medical records computer software with the Copyright Office. Plaintiff filed materials with the Copyright Office in 2004 in an effort to register a copyright on his medical records program. Plaintiff Goldman filed this suit in 2005 alleging copyright infringement of his medical records software. Defendants' expert has since issued a report in which he apportions damages grounded in the notion that, because only three of the more than two hundred programs which comprised Plaintiff's integrated package contained full copyright notices, Defendants would only be liable for 1.5% of any damage award.

## II. LEGAL FRAMEWORK

Under the Federal Rules of Evidence, all relevant evidence is admissible and evidence that is not relevant is not admissible. FED.R.EVID. 402. The rules define "relevant evidence" as any "evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED.R.EVID. 401. Evidence that is relevant may be excluded if its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of the evidence." FED.R.EVID. 403. The Supreme Court has remarked on several occasions that the standard for relevancy is liberal. *See e.g. Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 587, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See also Churchwell v. Bluegrass Marine, Inc.,* 444 F.3d 898, 905 (6th Cir.2006) (noting same). In addition, an expert's testimony must assist the trier of fact to understand the evidence or determine a fact in issue. FED.R.EVID. 702.

The Federal Rules of Evidence do not specifically contemplate the use of motions in limine, however, their use has evolved under the federal courts' inherent authority to manage trials. *See Luce v. United States,* 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984). *See also Figgins v. Advance America Cash Advance Ctrs. of Michigan, Inc.,* 482 F.Supp.2d 861 (E.D.Mich.2007) (explaining that such motions find some basis for authority under Rule 103(c), which provides that jury proceedings should be conducted "so as to prevent inadmissible evidence from being suggested."). The purpose of a motion in limine is to allow a court to rule on evidentiary issues in advance of trial in order to avoid delay and ensure and evenhanded and expeditious trial and to focus the issues the jury will consider. *United States v. Brawner,* 173 F.3d 966, 970 (6th Cir.1999) (holding federal rules of evidence, civil procedure and criminal procedure and interpretive rulings of the Supreme Court all encourage parties to use pretrial procedures, such as motions in limine, to narrow the issues and minimize disruptions at trial); *Jonasson v. Lutheran Child and Family Servs.,* 115 F.3d 436, 440 (7th Cir.1997). The decision to grant or deny a motion in limine is within a trial court's discretion. *United States v. Certain Land Situated in the City of Detroit,* 547 F.Supp. 680, 681 (E.D.Mich.1982). Such motions serve important gatekeeping

functions by allowing the trial judge to eliminate from consideration evidence that should not be presented to the jury because it would not be admissible for any purpose. *Jonasson,* 115 F.3d at 440.

## III. ANALYSIS

### A. *Dkt. No. 156 Plaintiff's motion in limine to exclude evidence challenging the copyrightability of medical records computer program*

▮ Plaintiff Goldman moves to prevent Defendants from introducing evidence challenging the copyrightability of the medical records software. Plaintiff asserts computer programs, like his medical records software, are copyrightable. Plaintiff argues Defendants should be estopped from challenging the copyrightability of his program because Defendant HMS filed an application and registered its medical records computer program in 1994.

Defendants offer three arguments in response. First, Defendants argue, to the extent Plaintiff has copyrighted other programs contained in the larger package, copyright protection has not been extended to the medical records program as a whole. This response is appropriately characterized as a non sequitur. Through this motion, Plaintiff seeks an order precluding Defendants from introducing evidence that the computer program is not copyrightable. Plaintiff is not seeking an order preventing Defendants from introducing evidence that Plaintiff did not copyright his program.

Second, Defendants argue the medical records system was dictated by the requirements in the hospital industry and is not a unique expression of an original idea. Defendants argue Medicare forms and billing requirements dictated what functions the computer programs would perform and what information would have to be included on any output.

Third, because their program is completely different, Defendants argue they should not be estopped from challenging the copyrightability of Plaintiff's program. Defendants allege, at best, only 30 of the 790 files in their computer program overlap with portions of Plaintiff's medical records program.

▮ In order to prevail on a claim of copyright infringement, a plaintiff must show (1) ownership of a valid copyright, and (2) copying by the defendant of protected components of the copyrighted material. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir.2003). "The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author." *Feist,* 499 U.S. at 345, 111 S.Ct. 1282. Even when original, a work might not be copyrightable because the protection does not extend to an idea, procedure, process, system, method of operation, concept, principle, or discovery. 17 U.S.C. § 102(b); *Lexmark Int'l Inc. v. Static Control Components, Inc.,* 387 F.3d 522, 534 (6th Cir. 2004).[1] A copyright may not protect an idea, only the expression of the idea. *Mazer v. Stein,* 347 U.S. 201, 217, 74 S.Ct. 460, 98 L.Ed. 630 (1954); *Lexmark,* 387

---

1. *Lexmark* includes three opinions with Judge Sutton writing the primary opinion, Judge Merritt writing a concurring opinion and Judge Feikens writing an opinion concurring in part and dissenting in part. All three opinions agree on the legal principles governing the copyrightability of a work. *Compare Lex-* *mark,* 387 F.3d at 534–535 (Sutton, J) with *Id.* at 551 (Merritt, J.) and *Id.* at 553–554 (Feikens, J.) (agreeing with the legal principles governing a copyright claim but disagreeing with whether there were sufficient facts on the record to conclude the computer program was not copyrightable).

F.3d at 534; *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 703 (2d Cir. 1992). Under the second prong of the claim for infringement, a plaintiff must show copying of an element of the work that is original. *Feist*, 499 U.S. at 361, 111 S.Ct. 1282; *Kohus*, 328 F.3d at 853.

▮▮▮▮▮ Computer programs maybe copyrighted as a literary works.[2] *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 838 (Fed.Cir.1992); *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1249 (3d Cir.1983); *Quinn v. City of Detroit*, 23 F.Supp.2d 741, 747–748 (E.D.Mich.1998) (quoting *Apple Computer*). *See also Lexmark* 387 F.3d at 533 (involving a situation where the parties agreed that computer programs may be entitled to copyright protection as literary works, the court cited several sources supporting the parties' agreement including *Atari Games* and *Apple Computer*) and H.R.Rep. No. 94–1476, at 53 (1976) *reprinted in* 1976

U.S.C.C.A.N. 5659, 5667 (explaining literary works include "computer data bases and computer programs to the extent they incorporate authorship in the programmer's expression of original ideas, as distinguished from the ideas themselves."). Both literal and nonliteral elements of a computer program may receive copyright protection. *Altai*, 982 F.2d at 702. The literal elements of a computer program include the source and object codes.[3] *Id.; Apple Computer*, 714 F.2d at 1246–1247. Nonliteral elements of a computer program include screen displays, the main menu and submenu command tree structure, parameter lists, macros, and general flow charts. *Mitek Holdings, Inc. v. Arce Engineering Co. Inc.*, 89 F.3d 1548, 1555 nn. 15, 16 (11th Cir.1996). This case involves the alleged verbatim copying of Plaintiff's source code rather than an infringement of a nonliteral element of the program.[4]

**2.** Authored works which may enjoy copyright protection include "literary works." 17 U.S.C. § 102(a)(1). "Literary works" are broadly defined as

> works, other than audiovisual works, expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied.

17 U.S.C. § 101. Furthermore, 17 U.S.C. § 117 necessarily implies computer programs are copyrightable. Under section 117, the owner of a copy of a computer program does not infringe (on a copyright) when he or she make a copy of the program as an essential step in utilizing the program or if the new copy is made for archival purposes. 17 U.S.C. § 117(a)(1–2).

**3.** Source code is the version of a computer program that humans can read. It is the series of instructions written in a computer language like COBOL, BASIC, or FORTRAN. The source code, once translated into a binary language of ones and zeros, is the object code

which dictates how a computer behaves. *See Lexmark*, 387 F.3d at 533; *Altai*, 982 F.2d at 698.

**4.** In *Altai*, the Second Circuit Court of Appeals advanced a three step procedure for determining which aspects of the non-literal elements of a computer program are protectable under copyright law by providing a mechanism to test the substantial similarity between two computer programs. 982 F.2d at 706 (entitling the three steps as abstraction-filtration-comparison). *See Kohus*, 328 F.3d at 855 n. 1. That approach has been adopted by other circuits. *See e.g., Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir.1994); *Gates Rubber Co. v. Bando Chemical Industries, Ltd.*, 9 F.3d 823 (10th Cir.1993). The procedure is useful when analyzing nonliteral copying (paraphrasing) of nonliteral elements of a computer program (user interfaces). *See MiTek*, 89 F.3d at 1556 n. 16. The approach is not necessary or useful here as the alleged infringement is literal in both senses of the word: literal copying (word for word) and a literal element of the program (source code).

Courts have found literal elements of a computer program, like source codes, may not copyrightable under the doctrines of merger and scenes á faire. More appropriately stated, courts have found that the two doctrines do not limit the subject matter of a copyright, but rather define the contours of infringing conduct such that any similarity between a plaintiff's and a defendant's work would not constitute infringement. 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 13.03[B][3] (merger) and [B][4] (scenes a faire) (2008). *See also Id.* § 13.03[F][3] at 13–137 (noting the two doctrines "apply particularly to computer programs, because in many instances, it is virtually impossible to write a program to perform particular functions in a specific computing environment without employing standard techniques."). The defendant, rather than the plaintiff, bears the burden of establishing, at trial, the application of the doctrines. *Id.* § 13.03[F][3] at 13–138.

 Under the doctrine of merger, where there is only one way, or so very few ways, of expressing an idea, the expression becomes essential to the statement of the idea and copyright will not bar copying the expression. *Lexmark Int'l,* 387 F.3d at 535; *Gates Rubber Co.,* 9 F.3d at 838; *Altai,* 982 F.2d at 707–708. "For computer programs, 'if the patentable process is embodied inextricably in the line-by-line instructions of the computer program, [ ] then the process merges with the expression and precludes copyright protection.'" *Lexmark Int'l,* 387 F.3d at 535 (quoting *Atari Games,* 975 F.2d at 839–840). Professor Nimmer describes the merger doctrine as precluding from copyright protection those elements of a computer program which are dictated by logic and efficiency. 4 NIMMER ON COPYRIGHT § 13.03[F][2]. Although there may be many ways to accomplish certain tasks in a computer program, there may be only one or two ways which are the most efficient and therefore those expressions will recur in many computer programs, for example programs which sort vast amounts of data. *Id.* The method, expression or algorithm used to sort data is dictated purely by efficiency concerns and the fact there two programs use that method equally supports the inference of independent creation and copying, and therefore the expression is not copyrightable. *Id.*

 Under the doctrine of scenes á faire (that must be done), when external factors limit the choice of expressions, copyright protection is precluded. *Lexmark Int'l,* 387 F.3d at 535; *Gates Rubber Co.,* 9 F.3d at 838 (explaining the doctrine as denying protection to expressions that are standard, stock or common to a particular topic or that necessarily follow from a common theme or setting); *Altai,* 982 F.2d at 709–710. In the context of computer programming, the doctrine precludes protection for those elements of the program "dictated by practical realities— e.g., by hardware standards and mechanical specifications, software standards and compatibility requirements, computer manufacturer design standards, target industry practices, and standard computer programming practices." *Lexmark Int'l,* 387 F.3d at 535.

Plaintiff's motion (Dkt. No. 156) is DENIED. Plaintiff will have to establish valid ownership of a copyright and copying of the protected material. Defendants are entitled to present evidence, if they wish, attempting to establish that all or portions of Plaintiff's program do not merit copyright protection under either the merger doctrine or the doctrine of scenes á faire. Plaintiff has not provided sufficient facts here for this Court to conclude, as a matter of law, that one or both doctrine do not apply. Furthermore, Defendants are not

estopped from arguing either defense. Defendants also filed copyright papers for their computer program. To the extent Defendants can establish that all or portions of Plaintiff's program falls under either doctrine, the substantially similar portions of Defendants' program would be subject to the same argument. Testimony regarding whether Plaintiff's program is copyrightable is relevant and admissible. The testimony would not be more prejudicial than probative.

B. *Dkt. No. 185 Plaintiff's motion in limine to exclude evidence of apportionment of liability or damages based on frequency of copyright notice*

■ The issue presented in this motion is whether the Defendants' expert's testimony regarding apportionment of damages is admissible. The underlying complaint alleges copyright infringement of a computer program. To establish ownership of a valid copyright, the author, Plaintiff here, must show, among other things, compliance with the applicable statutory formalities. *Atari, Inc. v. Amusement World, Inc.*, 547 F.Supp. 222, 225 (D.Md. 1981) (citing 3 NIMMER ON COPYRIGHT § 13.01(A)[5]). The form of notice of copyright required by statute includes three elements: (1) a copyright symbol "©", the word "copyright" or the abbreviation "copr.", (2) the year of the first publication of the work, and (3) the name of the owner of the copyright or an abbreviation by which the owner can be recognized. 17 U.S.C. § 401(b). The notice must be affixed to the work "in such a manner and location as to give reasonable notice of the claim of copyright." 17 U.S.C. § 401(c). Whether the manner and location of the copyright notice provides reasonable notice is a question of fact. *See generally* 2 NIMMER ON COPYRIGHT § 7.10[A][1], citing *E.F. Johnson v. Uniden Corp.*, 623 F.Supp. 1485, 1492 (D.Minn.1985).

In order to prevail, Plaintiff must demonstrate to the jury that he complied with the statutory requirements by including a copyright notice and that the manner and location of that notice was reasonable so as to give notice of his claim of copyright. In his motion, Plaintiff indicates he will offer three computer programs which comprise portions of his medical records system from the relevant time period that contain the required copyright notice. (Motion at 5). Plaintiff indicates he will testify that the 200 programs comprising his medical records system were sold as a single commercial unit and that most, if not all, of the programs provided to Defendant Givens in 1983 contained the full copyright notice. (*Id.*). Finally, Plaintiff asserts Defendant Givens' admitted in his deposition he removed Mr. Goldman's name from portions of the source code. (*Id.*).

■ As presented in this motion, Plaintiff could presumably advance two legal theories to establish his copyright claim. First, the entire medical records system is protected because it is a single commercial unit. *See Koontz v. Jaffarian*, 787 F.2d 906 (4th Cir.1986); *Monogram Models, Inc. v. Industro Motive Corp.*, 492 F.2d 1281 (6th Cir.1974); *Faessler v. United States Playing Card Co.*, No. 1:05–cv–581, 2007 WL 490171 at * 7 (S.D.Ohio Feb. 9, 2007) (citing *Monogram Models*). Second, the jury could believe that Plaintiff placed copyright notices on his programs and that Defendant Givens removed them. As a factual matter, defendant vigorously disputes both theories. Plaintiff unequivo-

---

**5.** The same elements are outlined in the most recent edition of the treatise. *See* NIMMER ON COPYRIGHT § 13.01[A].

cally states, under the Copyright Act, copyright protection is an all or nothing issue; "[e]ither plaintiff's *entire* Medical Records system is protected, or *none* of it is." (Motion at 3) (emphasis in original). Having taken this position in support of his motion, plaintiff is bound at trial to this legal theory.

Neither theory can be resolved as a matter of law by this Court through this motion. Both theories hinge on a resolution of facts and credibility of witnesses which must be presented to and determined by the jury. If the jury concludes Plaintiff failed to provide reasonable notice under any theory, Plaintiff' copyright infringement claim would fail. If the jury concludes Plaintiff fails to establish any other essential element of his copyright claim, Plaintiff's infringement claim would also fail. Only if Plaintiff successfully establishes each element of his copyright claim would the issue of damages arise.

Accordingly, Plaintiff's Motion (Dkt. No. 185) in Limine to Exclude Evidence Concerning Apportionment of Liability or Damages on Frequency of Copyright Notice is GRANTED. Under Plaintiff's all or nothing theory of copyright protection as presented to the jury, evidence as to apportionment of damages based on the frequency of copyright notice is not relevant and therefore not admissible. Defendants' expert's apportionment of damages would be irrelevant under Rule 402. The testimony would be misleading and confusing under Rule 403. Furthermore the testimony would not assist the trier of fact under Rule 702.

## IV. CONCLUSION

Plaintiff's motion (Dkt. No. 156) in limine to exclude evidence of copyrightability is DENIED. Defendants may offer evidence challenging the copyrightability of Plaintiff's program. Plaintiff's motion

(Dkt. No. 185) in limine to exclude evidence of apportionment of damages is GRANTED. Under Plaintiff's all or nothing theory of copyright protection, apportionment of damages is irrelevant and evidence as to apportionment of damages is inadmissible

### *ORDER*

Plaintiff's motion (Dkt. No. 156) in limine to exclude evidence challenging the copyrightability of medical records computer program is **DENIED.** Plaintiff's motion (Dkt. No. 185) to exclude evidence concerning apportionment of liability or damages based on frequency of copyright notice is **GRANTED. IT IS SO ORDERED.**